**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LENEISJE MOSSIAH, and others similarly situated,

            Plaintiff,

- v -

SECURITY SERVICES HOLDINGS, LLC d/b/a MULLIGAN SECURITY,

            Defendant.

Civil Action No.: 1:25-cv-4561

**COMPLAINT**

Plaintiff Leneisje Mossiah ("Mossiah") and those similarly situated, by and through their undersigned attorneys, bring this Complaint against Defendant Security Services Holdings, LLC d/b/a Mulligan Security ("Mulligan"), and allege as follows:

### PRELIMINARY STATEMENT

1. This is a putative class action brought by Mossiah on her own behalf and on behalf of all similarly situated employees, against Mulligan for violations of the federal Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. §§ 2101–2109, and the New York State WARN Act ("NY WARN Act"), NY Labor Law § 860 *et seq.*, 12 N.Y.C.R.R. Part 921.

### JURISDICTION AND VENUE

2. The Court has original jurisdiction over Mossiah's federal claims pursuant to 28 U.S.C. § 1331.

3. The Court has supplemental jurisdiction over Mossiah's state-law claim pursuant to 28 U.S.C. § 1367 because the claim is so related to the federal claim that it forms part of the same case or controversy.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §

1391 because a substantial part of the events or omissions giving rise to the claims occurred there.

## PARTIES

5. Plaintiff Mossiah is a resident of the State of New York and former security guard employed by Mulligan.

6. At all relevant times, Mossiah was a full-time employee of Defendant under all relevant statutes.

7. Mulligan is a foreign limited-liability company, with its principal place of business in New York, and permitted to do business in New York.

8. Mulligan employed at least 100 full-time employees throughout Mossiah's employment.

9. Mulligan conducted business at 1760 3rd Ave, New York, NY 10029, where it employed Mossiah.

10. At all relevant times, Defendant was Mossiah's "employer" under all relevant statutes.

## FACTUAL BACKGROUND

11. In or about July 2022, Mulligan hired Mossiah as a security guard.

12. Mossiah worked from Mulligan's 1760 3rd Ave, New York, NY 10029 ("Bird Dorms site") location.

13. The Bird Dorms site facility is a "single site of employment" within the meaning of 29 U.S.C. § 2101(a)(2) and 20 C.F.R. § 639.3(i).

14. Mulligan provided security services for an immigrant shelter that operated out of the Bird Dorms site.

15. Mossiah was a full-time employee and worked 40 hours per week on average.

16. On information and belief, Mulligan employed at least 100 full-time employees at all relevant times.

17. Beginning in or around December 2023, Mossiah overheard discussions between Mulligan supervisors and other service providers at the Bird Dorms site concerning when Mulligan's contract with the immigrant shelter was set to expire.

18. In December 2023, Mossiah overheard that Mulligan's contract with the immigrant shelter at the Bird Dorms site was set to expire in December 2023.

19. Throughout 2024, Mulligan supervisors and other service providers engaged in ongoing discussions about when Mulligan's contract at the Bird Dorms site would expire and when the site would close in Mossiah's presence.

20. In or around August 2024, Mossiah overheard that Mulligan's contract with the shelter would likely expire in December 2024 and the site would be closing before the contract expired.

21. In October 2024, it became apparent that the Bird Dorms site would be closing in November 2024 as posters had been put up around the site by another service provider announcing that the site would be permanently closing on November 25, 2024, and residents housed at the site began moving out.

22. Merely six days before the mass layoff at the Bird Dorms site, on November 18, 2024, Mossiah and approximately 140 other employees received an email with the subject line "Notice of layoff to affected employees pursuant to the Worker Adjustment and Retraining Notification (WARN) Act" from Mulligan's Human Resource Department.

23. The email stated that Mulligan would experience a reduction in its workforce and

a number of employees of the Bird Dorms site would experience layoffs beginning around November 24, 2024 and that no Mulligan Security Bird Dorms employee should count on being recalled to employment.

24. Mossiah was laid off effective November 24, 2024.

25. On November 26, 2024, in response to Mossiah's email about why she only received six days of advanced notice prior to being laid off, Mulligan claimed that exceptions to the NY WARN Act's 90-day notice requirement may be made in cases of unforeseeable business circumstances, such as the sudden loss of a client or contract.

26. Although the expiration of Mulligan's contract had been openly discussed by company managers at the Bird Dorms site almost a year in advance, Mulligan did not provide notice of the plant closure or mass layoff 60 days in advance as required by the federal WARN Act or 90 days in advance as required by the NY WARN Act.

27. Defendant failed to serve the written WARN notice required by 29 U.S.C. § 2102(a)(2) on both (a) the New York State Department of Labor's Dislocated Worker Unit and (b) the chief elected official of the City of New York, the locality in which the Bird Dorms single site of employment is situated.

28. Defendant likewise omitted the notice mandated by NYLL § 860-b(1) to the New York State Commissioner of Labor, the local workforce investment board, the chief elected official of New York City, and the emergency-services providers that serve the Bird Dorms site.

29. On information and belief, on or about November 24, 2024, Mulligan laid off all but seven employees at the Bird Dorms site, comprising over 33% of its workforce at that site.

30. On or about November 24, 2024, the Bird Dorms site permanently shut down.

**FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS**

31. Plaintiff seeks to maintain this action as a class action pursuant to Fed. R. Civ. P. 23, on behalf of those who did not receive the advance notice of a plant closure or mass layoff (i.e., the termination of their employment) required under the federal WARN Act or NY WARN Act during the previous six (6) years (the "Class").

32. The number of class members protected by the WARN Act and NY WARN Act who have suffered under Defendant's violations of such statutes are believed to be in excess of one hundred (100) and thus are too numerous to join in a single action, necessitating class recognition.

33. All questions relating to the Class's allegations under the WARN Act and NY WARN Act share a common factual basis with those raised by the claims of Plaintiff. No claims asserted herein under these statutes are specific to Plaintiff or any Class member and the claims of Plaintiff are typical of those asserted by the proposed Class.

34. Plaintiff will fairly and adequately represent the interests of all members of the proposed Class.

35. A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the Class's allegations that Defendant violated the WARN Act and NY WARN Act.

36. The class members of the proposed Class are readily discernable and ascertainable. Contact information for all members of the proposed Class is readily available from Defendant since such information is likely to be contained in their personnel files. Notice of this class action can be provided by any means permissible under the Fed. R. Civ. P. 23 requirements.

37. Plaintiff asserts these claims on her own behalf as well as on behalf of the Class.

38. Plaintiff's attorneys are experienced in class action litigation as well as employment litigation.

39. Plaintiff is able to fairly represent and properly protect the interests of the absent members of the proposed Class and has no interests conflicting with those of the Class.

40. The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual Class members creates a risk of varying results based on identical fact patterns as well as disposition of the Class's interests without their knowledge or contribution.

41. The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal. Without judicial resolution of the claims asserted on behalf of the proposed Class, continued violations of the WARN Act and NY WARN Act will undoubtedly continue unremedied.

42. Whether Plaintiff and the Class members were provided with required advance notice of termination is a common question which can readily be resolved through the class action process.

### FIRST CAUSE OF ACTION
**(Failure to Provide Notice in Violation of the Federal WARN Act)**
*Brought by Plaintiff on Behalf of Herself and the Class*

43. Mossiah, on behalf of herself and the Class repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

44. At all relevant times, Defendant Mulligan employed at least 100 full-time employees or at least 100 employees who worked a total of 4,000 hours per week.

45. On or about November 24, 2024, Mulligan reduced its workforce at the Bird

Dorms site by at least 50 full-time employees, which comprised at least 33% of the full-time workforce at that site.

46. On or about November 24, 2024, the Bird Dorms site permanently shut down, resulting in job losses for 50 or more full-time employees.

47. Mulligan failed to provide adequate written notice to affected employees at least 60 days in advance of the reduction in workforce or plant closure at the Bird Dorms site.

## SECOND CAUSE OF ACTION
### (Failure to Provide Notice in Violation of the NY WARN Act)
*Brought by Plaintiff on Behalf of Herself and the Class*

48. Mossiah, on behalf of herself and the Class repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

49. At all relevant times, Defendant Mulligan employed at least 50 full-time employees or 50 or more employees that worked in the aggregate at least 2,000 hours per week in New York State.

50. On or about November 24, 2024, Mulligan reduced its workforce at the Bird Dorms site by at least 25 full-time employees, which comprised at least 33% of the full-time workforce at that site.

51. On or about November 24, 2024, Mulligan's Bird Dorms site permanently shut down, resulting in job losses for at least 25 full-time employees.

52. Mulligan failed to provide adequate written notice to affected employees at least 90 days in advance of the reduction in workforce at the Bird Dorms site.

## RELIEF

Plaintiff Leneisje Mossiah on behalf of herself and the Class demands judgment in her favor and against Defendant Mulligan Security as follows:

A. A declaratory judgment that the actions of Defendant complained of violate the federal and New York State WARN Acts;

B. An award of damages against Defendant, in the amount of backpay during the violations period as provided by the federal and state WARN Acts;

C. An award of damages against Defendant, in the amount of employee benefits, including health insurance, dental insurance, retirement or other employment benefits during the violation period as provided by the federal and state WARN Acts;

D. Prejudgment interest on all amounts due;

E. An award of Mossiah's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

F. Such other and further relief as the Court may deem just and proper.

Dated: May 30, 2025
New York, New York

**RISSMILLER PLLC**

By: */s/ Alex Rissmiller*
Alex Rissmiller
Jazly Liriano
5 Pennsylvania Plaza, 19th Floor
New York, NY 10001
T: (646) 664-1412
arissmiller@rissmiller.com
jliriano@rissmiller.com

*Attorneys for Plaintiff Leneisje Mossiah*