UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
LENEISJE MOSSIAH, *and others similarly*                                :
*situated*,                                                             :
                                                                        :
                                            Plaintiff,                  :                25-CV-04561 (JAV)
                                                                        :
                    -v-                                                 :                OPINION AND ORDER
                                                                        :
MULLIGAN SECURITY LLC, et al.,                                          :
                                                                        :
                                            Defendants.                 :
                                                                        :
------------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

Plaintiff Leneisje Mossiah ("Plaintiff") brings this action against Defendants

Mulligan Security LLC ("Mulligan") and Universal Protection Service, LLC

("Universal") (collectively, "Defendants").  Plaintiff alleges that Defendant Mulligan

terminated her employment without providing appropriate notice pursuant to the

federal Worker Adjustment and Retraining Notification ("WARN") Act and the New

York State WARN Act ("NY WARN Act").  ECF No. 30 ("SAC"), ¶¶ 1, 30.  Presently

before the Court are Mulligan's and Universal's motions to dismiss for lack of

jurisdiction and to compel arbitration.  ECF Nos. 34, 44.

Plaintiff raises a disputed issue of fact as to whether a contract containing an

arbitration clause was formed.  ECF No. 50 ("Opp'n") at 3-5.  Accordingly, pursuant

to 9 U.S.C. § 4, the Court must hold a trial.  9 U.S.C. § 4 ("If the making of the

arbitration agreement or the failure, neglect, or refusal to perform the same be in

issue, the court shall proceed summarily to the trial thereof.").

## BACKGROUND

Plaintiff alleges that Mulligan hired Plaintiff as a security guard in or about July 2022 and terminated her employment on November 24, 2024, without providing appropriate notice pursuant to the federal WARN Act or New York WARN Act.  SAC, ¶¶ 14, 27, 30.

At the time she was hired by Mulligan, Plaintiff electronically signed an offer of at-will employment that sets forth the terms and conditions of her employment. ECF No. 36-1 at 5 (the "Offer Letter").  The Offer Letter in question, however, states that Plaintiff is being offered the "position of Recruiter with Mulligan Security LLC." *Id.* at 2.  It describes her Recruiter position as a full-time, nonexempt hourly position.  *Id.*  The Offer Letter states, "In your capacity as Recruiter, you will be responsible for duties associated with the position." *Id.*  It instructs her to report to an Account Manager named Eulises Rivera.  *Id.*  It further provides that Plaintiff's employment was "subject to the terms and conditions set forth in this letter." *Id.* As relevant here, the Offer Letter contained a bold and underlined arbitration clause which stated that "any dispute, controversy, or claim arising out of or related to your employment" must be "decided by binding arbitration." *Id.* at 3.

Plaintiff, however, never worked for Mulligan as a recruiter.  ECF No. 51 ("Mossiah Decl."), ¶ 17.  Plaintiff worked as a security guard for Mulligan at an immigrant shelter that operated out of the Bird Dorms site facility.  SAC, ¶¶ 15-17; Mossiah Decl., ¶¶ 15, 19.  Indeed, the other paperwork that Plaintiff signed at the time of her hiring, including her onboarding processing sheet, indicates that

Plaintiff was hired as a security guard.  Mossiah Decl., Ex. C.  Plaintiff never reported to (or met) Eulises Rivera, but instead was supervised by a manager at the Bird Dorms site.  *Id.*, ¶ 18.

Plaintiff asserts that she does not recall seeing the Offer Letter prior to this litigation.  *Id.*, ¶ 13.  She acknowledges that on the day she was hired, however, she "clicked through various electronic forms" that she understood were "administrative tax and payroll documents."  *Id.*, ¶ 12.

Plaintiff points to a different document that she signed on the day she was hired and claims that she intended for that document to be her employment contract.  *Id.*, ¶¶ 5-6.  This single-page document provides a space to fill in "Security Officer Name," "Site Name," "Site Address," and "Pay Rate."  *Id.*, Ex. A.  It sets forth Plaintiff's assigned scheduled and then lists the "basic rules and regulations that are to be followed at all times as an employee of Mulligan Security."  *Id.*  The seven listed rules largely pertain to the process for signing in at the start of a shift, reporting absences, and making schedule changes.  *Id.*  One rule, however, states that "[a]ll officers are to report for roll call before his or her scheduled tour of duty as per their contract."  *Id.*  Another rule warns that officers who do not wait for relief or do not report for their scheduled tour will be subject to disciplinary action.  *Id.*

## LEGAL STANDARDS

The Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16, "reflects a legislative recognition of the desirability of arbitration as an alternative to the

complications of litigation." *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (cleaned up). The FAA establishes that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Any party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may seek an order from the district court directing that "arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

The Court must perform a two-step inquiry to determine whether to compel arbitration. *Palmer v. Starbucks Corp.*, 735 F. Supp. 3d 407, 415-16 (S.D.N.Y. 2024) (citing *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003)). First, the Court determines whether "the parties entered into a contractually valid arbitration agreement." *Id.* at 416 (cleaned up). Second, the Court considers "whether a court or an arbitrator should decide if the dispute falls within the scope of the agreement to arbitrate." *Id.* (cleaned up).

"[T]he question of whether the parties agreed to arbitrate is to be decided by the court[.]" *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citation omitted). The moving party has the burden to demonstrate that an agreement to arbitrate exists. *See Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101-02 (2d Cir. 2022).[1]

---

[1] While the parties can delegate to the arbitrator questions regarding arbitrability, such as whether the agreement to arbitrate was unconscionable or whether a particular claim falls within the scope of the arbitration clause, *see, e.g.*, *Ward v. Ernst & Young U.S. LLP*, 468 F. Supp. 3d 596, 602-04 (S.D.N.Y. 2020), "whether the parties agreed to arbitrate in the first place is one only a court can answer, since in

Courts apply a "standard similar to that applicable for a motion for summary judgment" when adjudicating a motion to compel arbitration. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). Courts must consider all relevant, admissible evidence submitted by the parties and draw all reasonable inferences in favor of the non-moving party. *Id.* The motion should be granted if the "pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law." *Gabay v. Roadway Movers, Inc.*, 671 F. Supp. 3d 371, 378 (S.D.N.Y. 2023) (citation omitted). "If the facts in the record are undisputed, and require the matter of arbitrability to be decided against one side or the other as a matter of law, the Court may rule on the basis of that legal issue and avoid the need for further court proceedings." *Id.* (cleaned up).

If, however, there is an issue of fact in contract formation, the matter must proceed to trial. *See Bensadoun*, 316 F.3d at 175; *see also* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.").

---

the absence of any arbitration agreement at all, questions of arbitrability could hardly have been clearly and unmistakably given over to an arbitrator," *Lin v. DISH Network*, No. 19-CV-01087 (AMD)(LB), 2020 WL 13845109, at *2 (E.D.N.Y. Feb. 5, 2020) (cleaned up).

5

## DISCUSSION

"Arbitration under the [FAA] is a matter of consent, not coercion." *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003). Thus, though the presumption in favor of arbitration is strong, the law still requires that parties actually agree to arbitration before it will order them to arbitrate a dispute. *Segui v. Solar Mosaic, LLC*, 802 F. Supp. 3d 545, 559 (S.D.N.Y. 2025). "Whether one can be bound by an arbitration clause is usually determined by looking at generally accepted principles of contract law." *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 327 (S.D.N.Y. 2014) (quoting *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004)).

"Under New York law, a valid contract requires an offer, acceptance, consideration, mutual assent[,] and an intent to be bound."[2] *Hastings v. Nifty Gateway, LLC*, 724 F. Supp. 3d 241, 248 (S.D.N.Y. 2024) (cleaned up); *see also Segui*, 802 F. Supp. 3d at 559 (requiring mutual assent "with respect to all material terms" to form a contract). "Absent a meeting of the minds on all essential terms, there is no contract." *Duckett v. Williams*, 86 F. Supp. 3d 268, 272 (S.D.N.Y. 2015) (cleaned up). Because a meeting of the minds is evidenced by objective manifestations of assent, the Court must consider "the attendant circumstances, the situation of the parties, and the objectives they were striving to attain." *Stonehill*

---

[2] The parties agree that New York law applies to this question. *Compare* Opp'n at 3-8, *with* ECF No. 35 at 3-9, *and* ECF No. 45 at 3-10. Accordingly, the Court applies New York law. *See Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC*, 760 F. Supp. 2d 384, 397 (S.D.N.Y. 2011).

*Cap. Mgmt., LLC v. Bank of the West*, 68 N.E.3d 683, 689 (N.Y. 2016) (citation omitted).  Despite the FAA's strong policy favoring arbitration, parties to an agreement must assent to all essential terms before the Court can compel the parties to arbitrate.  *See Cap Gemini Ernst & Young*, 346 F.3d at 364.

On this record, there is a genuine dispute of fact as to whether the parties mutually assented to the recruiter contract.  On the one hand, Mulligan presented Plaintiff with the Offer Letter and she signed it, indicating an intent to be bound.  ECF No. 36 ("Araujo Decl."), ¶ 4.  The arbitration provision is written in bold and underlined text.  And after electronically signing the Offer Letter, Plaintiff worked for Mulligan for more than a year, which could be construed as conduct confirming her acceptance and mutual assent.

On the other hand, the parties' conduct indicates that neither side intended to bind Plaintiff to all the material terms of that contract.  Plaintiff was never employed as a recruiter and never worked for Mulligan as a recruiter.  She never performed the duties or obligations of a recruiter.  She never reported to the supervisor listed in the Offer Agreement.  She was presented with a voucher to obtain a security guard uniform the same day she executed the Offer Letter.  Mossiah Decl., ¶¶ 8-10.  She was also presented with a schedule indicating that she was to report for duty as a security guard at an assigned site subject to the rules and regulations governing security guards.  *Id.*, Ex. A.  Accordingly, Mulligan's objective conduct indicates that Mulligan did not fairly contemplate that Plaintiff

would work as a recruiter.  Plaintiff also says as much in her declaration: "I

certainly did not intend to sign a contract to become a 'Recruiter.'"  *Id.*, ¶ 13.

Plaintiff argues that the scheduling document she executed on the day of her

hiring constitutes the entirety of her employment contract and that there are thus

two conflicting contracts.  *See* Opp'n at 4-5.  Again, the record is at best ambiguous

as to whether the scheduling document was intended to be the entirety of Plaintiff's

employment contract or simply part of a single employment contract, which also

included the Offer Letter.

Plaintiff argues in the alternative that, even if there was a valid arbitration

clause, Mulligan has waived enforcement by first litigating in the district court.  *Id.*

at 5-7; *see, e.g.*, *Doyle v. UBS Fin. Servs., Inc.*, 144 F.4th 122, 130-31 (2d Cir. 2025).

While this argument has merit, it is clearly inapplicable to Universal, which was

recently added as a Defendant to this case in the Second Amended Complaint filed

in November 2025.

Plaintiff suggests in the alternative that, as a non-signatory, Universal has

no right to move to enforce the arbitration clause.  Opp'n at 7-8.  The Second Circuit

has recognized "a number of common law principles of contract law that may allow

non-signatories to enforce an arbitration agreement, including equitable estoppel."

*Doe v. Trump Corp.*, 6 F.4th 400, 412 (2d Cir. 2021).  To determine if a signatory is

estopped from contesting an obligation to arbitrate with an entity that was not a

party to the original contract, courts look to

> the relationships of persons, wrongs and issues, in particular whether
> the claims that the nonsignatory sought to arbitrate were intimately

> founded in and intertwined with the underlying contract obligations. In this way, the circuits have been willing to estop a *signatory* from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.

*Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*, 271 F.3d 403, 406 (2d Cir. 2001) (cleaned up).  Applying that test here, Universal is a proper party to enforce the arbitration clause.  Plaintiff's WARN claims arise as a result of her employment relationship with Mulligan.  Universal is not alleged to have had an independent employment relationship with Plaintiff.  Rather, Universal is sued solely as a successor in interest to Mulligan.  Plaintiff cannot simultaneously assert that Universal is liable for Mulligan's violations of the WARN Act as a successor entity, yet at the same time argue that Universal has no standing to seek to compel the arbitration clause in Plaintiff's employment contract mandating arbitration of all claims arising from that employment relationship.

### CONCLUSION

Because the Court concludes that there exists a genuine dispute of material fact as to contract formation, the Court must hold a trial to resolve this issue.  9 U.S.C. § 4.  The Court shall hold a pretrial conference on **March 4, 2026**, at 11:00 am.  The conference will be held in Courtroom 11B, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007.  Prior to the conference, the parties shall meet and confer as to the length of the trial, whether a jury is demanded, and whether any additional discovery specific to the issue of contract formation will be needed prior to trial.

Discovery in this matter is stayed *sine die*.  The Clerk of Court is directed to terminate ECF No. 56.

     SO ORDERED.

Dated:  March 2, 2026
       New York, New York

                                   JEANNETTE A. VARGAS
                               United States District Judge

10